**Opinion issued September 3, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00333-CR

———————————

**REGINALD HUTCHINS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Case No. 1388778**

---

## O P I N I O N

Appellant Reginald Hutchins was charged with possession with intent to

deliver a controlled substance. *See* TEX. HEALTH & SAFETY CODE §§ 481.104(a)(4),

481.117(a), (e). He filed a motion to suppress evidence found during a search of

his car, which the trial court denied. Pursuant to a plea agreement, Hutchins pleaded guilty to the charged offense and was sentenced to five years in prison.

The trial court found that the search in this case was lawfully conducted on the basis of consent. In this appeal, Hutchins contends that the evidence of consent to the search was conclusory and insufficient to support the court's findings. The validity of a consent to search is a factual determination to be made by the trial court, not a legal determination that we review de novo. Because the record supports the trial court's finding, we affirm.

## Background

While driving his patrol car, Houston Police Officer Leonard Smith saw Reginald Hutchins's car exiting the freeway. Officer Smith followed Hutchins and subsequently stopped him for driving 40 miles per hour in a 35 mile-per-hour zone. As he approached the car, the officer saw several pill bottles in plain view. Hutchins claimed that the pills were his and gave "verbal consent" to search the car. According to the officer, Hutchins was not under arrest at this time. Hutchins was not given verbal warnings that he had the right to decline the search, nor was he asked to sign a written consent form.

Officer Smith testified to the foregoing version of events at a hearing on a motion to suppress evidence obtained as a result of the search. Hutchins also testified at the suppression hearing, and he offered a different version of events. He

testified that he was not going over 35 miles per hour because he had just pulled away from a traffic light. Hutchins testified that the officer took his driver's license and went back to his patrol car. Then the officer returned, asked him to step out of the vehicle, handcuffed him, and placed him in the back seat of the patrol car. When asked whether the officer asked him for verbal consent to search, and whether he in fact gave consent to search, Hutchins responded "No, sir."

The officer searched the trunk and wheel well of the car and found hydrocodone, which became the basis of Hutchins's conviction. The pills that the officer originally saw in plain view were later determined to be lawfully prescribed to Hutchins.

The motion to suppress was denied. At Hutchins's request, the trial court issued findings of fact and conclusions of law. The court found that "Officer Smith asked [Hutchins] if he could search his vehicle," and that he "freely and voluntarily gave verbal consent to search his vehicle." As part of a plea bargain with the State, Hutchins pleaded guilty to the charged offense in exchange for a recommended punishment of five years in prison. The trial court entered a judgment sentencing Hutchins to the recommended five years in prison, and this appeal followed.

**Analysis**

In his sole issue, Hutchins argues that the record does not support the court's findings that he consented to the search of his car and that this consent was given

3

freely and voluntarily. Therefore, Hutchins contends, the trial court erred by denying his motion to suppress evidence found in the trunk and wheel well of the car.

When reviewing a trial court's ruling on a motion to suppress, we review the evidence "in the light most favorable to the trial court's ruling." *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When a trial court makes explicit findings of fact, we must determine whether the evidence supports these fact findings. *Id.* We afford "almost total deference" to a trial judge's determination of the historical facts that the record supports. *State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). Next, we review the trial court's legal ruling de novo unless the court's explicit factual findings that are supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 818.

A search conducted without a warrant based on probable cause is per se unreasonable, "subject to only a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamente*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043 (1973); *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011). One exception is a search conducted with a person's voluntary consent. *Meekins*, 340 S.W.3d at 458.

Before a consent to search is deemed effective, the State must prove that the consent was freely and voluntarily given. *Meeks v. State*, 692 S.W.2d 504, 509

4

(Tex. Crim. App. 1985) (citing *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S. Ct. 1788, 1792 (1968)). In Texas, the State carries the burden to establish a valid consent to search by "clear and convincing" evidence. *Meekins*, 340 S.W.3d at 459. "The burden requires the prosecution to show the consent given was positive and unequivocal and there must not be duress or coercion, actual or implied." *Meeks*, 692 S.W.2d at 509; *see also Brown v. State*, 212 S.W.3d 851, 869 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

"The validity of a consent to search is a question of fact to be determined from all the circumstances." *Meekins*, 340 S.W.3d at 458 (citing *Schneckloth*, 412 U.S. at 226–27, 93 S. Ct. at 2047). Resolving a question about the voluntariness of a consent requires the trial court to "conduct a careful sifting and balancing of the unique facts and circumstances of each case." *Id.* at 459. In doing so, courts consider various factors, including: whether the consenting person was in custody, whether the person was arrested at gunpoint, the constitutional advice given to the person, the length of the detention, the repetitiveness of the questioning, and the use of physical punishment. *See Flores v. State*, 172 S.W.3d 742, 749–50 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Because voluntariness is a fact-intensive determination, the trial court's finding must be accepted on appeal unless it is clearly erroneous. *Meekins*, 340 S.W.3d at 460.

The Court of Criminal Appeals has explained that the clear-and-convincing-evidence standard "deals with the quantity and quality of evidence to establish that a person did, in fact, consent to a search." *Id.* at 459 n.24. It does not concern the "separate, but not legally determinative, issue of 'how' a person consented—clearly, convincingly, positively, unequivocally, and so forth." *Id.* Even "[m]ere acquiescence" may support a finding of consent. *Id.* at 463–64 (quoting *Kelly*, 204 S.W.3d at 820–21). To ensure that the correct legal issue is addressed, the Court of Criminal Appeals has instructed that we frame the issue as: "Could a rational trier of fact conclude, by clear and convincing evidence (less than beyond a reasonable doubt), based upon all of the facts and logical inferences that can be drawn from those facts, and in the light most favorable to the prosecution, that [the appellant] voluntarily consented to the search?" *Id.* at 459 n.24 (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)).

In this case, the evidence adduced regarding the validity of consent consists of the testimony of Officer Smith and Hutchins. On direct examination, the prosecutor asked the police officer about receiving consent to search the vehicle, as well as whether the officer provided Hutchins with a written form or verbal warnings:

> Prosecutor:     Officer Smith, you mentioned that you approached the defendant and . . . saw the bottles in plain view. What happened after that?

| Officer: | I asked him to step out of the vehicle and I also requested consent to search his vehicle. |
|---|---|
| Prosecutor: | And at what point did you request his consent to search? Was he still in the vehicle at that time? |
| Officer: | Yes, ma'am, he was. |
| Prosecutor: | And what exactly, if you recall, did you say? |
| Officer: | I asked him for consent. . . . Usually what I ask is, is there anything illegal in the vehicle. And I asked him about the pills, which he said were his. And I asked for consent to search the vehicle. |
| Prosecutor: | And what was the defendant's reply? |
| Officer: | He gave me verbal consent. |

Defense counsel asked about written consent forms and verbal warnings on cross-examination, and the prosecutor raised the issue again on redirect:

| Defense Counsel: | Do you . . . usually keep in your possession while you are on patrol written consent-to-search forms? |
|---|---|
| Officer: | Yes, sir. |
| Defense Counsel: | Did you use or offer to Mr. Hutchins a written consent-to-search form on this occasion? |
| Officer: | No, sir, I did not. |
| Defense Counsel: | Does the written consent-to-search form indicate that consent is voluntary and that the request to search this—that the person has the right to decline to give you consent? |
| Officer: | Yes, sir. |

Defense Counsel: And you did not show that written form to Mr. Hutchins on this occasion, did you?

Officer: No, sir.

Defense Counsel: Did you give him verbal warnings that he had the right to decline the search?

Officer: No, sir.

. . . .

Prosecutor: Officer Smith, why didn't you ask the defendant to fill out a written consent-to-search form?

Officer: I had already asked him for consent and he gave consent.

In contrast to the officer's testimony, Hutchins asserted on direct examination that he never gave consent to search his car. He denied that the officer showed him anything in writing that indicated he had the right to decline to give consent. He denied being asked for verbal consent to search.

Emphasizing that the State had to show by clear-and-convincing evidence that his consent was unequivocal and voluntary, Hutchins argues that the officer's testimony—that he "gave . . . verbal consent"—is insufficient to satisfy the State's burden. He asserts that the officer's credibility is not at issue in this case; rather, he contends that the testimony, even if credited by the factfinder, cannot support the trial court's finding that consent was freely, voluntarily, and unequivocally given.

Hutchins relies upon *Ford v. State*, 158 S.W.3d 488 (Tex. Crim. App. 2005), and he reasons by analogy that the officer's assertion that he gave "verbal consent"

8

is a legal conclusion that fails to provide underlying facts necessary to support the conclusion. In *Ford*, the Court of Criminal Appeals held that an officer's "conclusory statement" that a defendant was "following too close" behind another vehicle could not support a finding of reasonable suspicion to initiate a traffic stop. *Ford*, 158 S.W.3d at 493. Because reasonable suspicion requires specific, articulable facts that would lead an officer to conclude that a particular person is, has been, or will be engaged in criminal activity, the Court held the officer's testimony was insufficient due to its lack of objective factual support. *Id.* at 493–94; *see also State v. Garcia*, No. 03-14-00048-CR, 2014 WL 4364623, at *4 (Tex. App.—Austin, Aug. 8, 2014, no pet.)(mem. op.)(conclusory allegation of "possible intoxication" was insufficient to support reasonable suspicion to justify detention, even when combined with an allegation of swerving).

Hutchins's analogy fails, however, because in the circumstances of this case, the validity of his consent was a factual determination that turned on witness credibility, not on an application of the law to the facts. Whether an officer had reasonable suspicion to detain a defendant, as was at issue in *Ford*, subsumes a legal determination that we review de novo after giving deference to the trial court's findings of fact underlying that conclusion. *See State v. Sheppard*, 271 S.W.3d 281, 291–92 (Tex. Crim. App. 2008) (stating that factual findings include "who did what, when, where, how, or why," as well as credibility determinations,

9

but "do not include legal rulings on 'reasonable suspicion' or 'probable cause'; those are legal conclusions subject to de novo review, not deference"). The validity of consent to search, by contrast, is "a question of fact to be determined from all the circumstances." *Meekins*, 340 S.W.3d at 458.

The trial court's factual finding is not undermined by the evidence that the officer did not offer verbal warnings or a written consent form to Hutchins. While "the showing of a warning is of evidentiary value in determining whether a valid consent was given," such a warning "is not required nor essential." *Meeks*, 692 S.W.2d at 510. Furthermore, to the extent that Hutchins argues that the trial court's finding was erroneous because the officer's testimony did not affirmatively demonstrate that his consent went beyond mere acquiescence, *Meekins* instructs that even a finding of "'[m]ere acquiescence' may constitute a finding of consent." *Meekins*, 340 S.W.3d at 463–64.

In accordance with the established standard of review on a motion to suppress, we afford "almost total deference" to the court's factual determination that Hutchins validly consented to the search. *State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). That determination was supported in the record by the officer's unequivocal testimony that Hutchins gave verbal consent to the search. Because the court's finding is not "clearly erroneous" when viewed in the

light most favorable to the prosecution, we accept it on appeal. *Meekins*, 340 S.W.3d at 459 n. 24, 460.

## Conclusion

We affirm the trial court's judgment.



Michael Massengale
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Justice Keyes, dissenting.

Publish. TEX. R. APP. P. 47.4.