PD-1307-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/3/2015 2:40:32 PM
Accepted 11/5/2015 1:40:06 PM
ABEL ACOSTA
CLERK

NO. PD-1307-15

## IN THE COURT OF CRIMINAL APPEALS
## OF THE STATE OF TEXAS

REGINALD HUTCHINS
*Appellant*

v.

THE STATE OF TEXAS
*Appellee*

No. 01-14-00333-CR
COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS

On Appeal from Cause Number 1388778
From the 230th District Court of Harris County, Texas

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

November 5, 2015

ABEL ACOSTA, CLERK

TONYA ROLLAND MCLAUGHLIN
TBN 24054176
4301 Yoakum Boulevard
Houston, Texas 77006
Phone: (713) 529-8500
tonya@rollandlaw.com

**Counsel for Appellant**

ORAL ARGUMENT RESPECTFULLY REQUEST

## IDENTITY OF PARTIES AND COUNSEL

APPELLANT:

Reginald Hutchins
TDC# 01921311
3295 FM 3514
Beaumont, Texas 77705

TRIAL PROSECUTORS:

Kristina Daily
Lisa Calligan
Assistant District Attorneys
Harris County, Texas
1201 Franklin Avenue
Houston, Texas 77002

DEFENSE COUNSEL AT HEARING:

Thomas Lewis
1602 Washington Avenue
Houston, Texas 77007

COUNSEL ON APPEAL FOR APPELLANT:

Tonya Rolland McLaughlin
4301 Yoakum Boulevard
Houston, Texas 77006

PRESIDING JUDGE:

Hon. Brad Hart
230th District Court
Harris County, Texas
1201 Franklin Avenue, 16th floor
Houston, Texas 77002

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL.................................................................2

INDEX OF AUTHORITIES ...................................................................................4

STATEMENT REGARDING ORAL ARGUMENT.......................................................5

STATEMENT OF THE CASE.................................................................................6

STATEMENT OF PROCEDURAL HISTORY..............................................................6

GROUND FOR REVIEW......................................................................................7

> THE FIRST COURT OF APPEALS, IN A 2-1 DECISION, ERRED IN AFFIRMING THE DENIAL OF APPELLANT'S MOTION TO SUPPRESS BECAUSE THE HOLDING WAS ONLY BASED ON OFFICER TESTIMONY THAT APPELLANT GAVE VERBAL CONSENT TO SEARCH AND DID NOT CONSIDER THE TOTALITY OF THE CIRCUMSTANCES.

ARGUMENT.....................................................................................................7

> BACKGROUND. ......................................................................................... 7

> ANALYSIS. ................................................................................................ 8

PRAYER.........................................................................................................10

CERTIFICATE OF SERVICE...............................................................................10

CERTIFICATE OF COMPLIANCE........................................................................11

APPENDIX.....................................................................................................12

# INDEX OF AUTHORITIES

## Cases

*Bumper v. North Carolina*, 391 U.S. 543, 549, 88 S.Ct. 1788, 1792 (1968) ....................................8

*Hutchins v. State*, _ S.W.3d _, (Tex. App. No. 01-14-00333-CR -- Houston [1st Dist.], delivered Sept. 3, 2015).. ................................................................................................6, 7, 9

*Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011). ..................................................8

## Constitutional Provisions, Statutes and Rules

Tex. R. App. Proc. 9.4(e)(i)......................................................................................... 11

Tex. R. App. Proc. 9.4(i)(3). ....................................................................................... 11

Tex. R. App. Proc. 9.4(j)............................................................................................. 10

TEX. R. APP. PROC. 66 ....................................................................................................6

## STATEMENT REGARDING ORAL ARGUMENT

Appellant request oral argument in this matter because he has raised important questions regarding verbal consent to search in this Court and believes that oral argument would help clarify the issue presented in his petition for discretionary review. Therefore he respectfully requests oral argument.

**TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:**

Now comes, Reginald Hutchins Appellant in this cause, by and through his attorney of record, Tonya Rolland McLaughlin, and, pursuant to the provisions of Tex. R. App. Pro. 66, *et seq.*, moves this Court to grand discretionary review, and in support will show as follows:

## STATEMENT OF THE CASE

Appellant was charged with possession of a controlled substance with intent to deliver. (CR at 103). He filed a motion to suppress the evidence. (CR at 23). The trial court denied the motion to suppress. (CR at 116 and RR at 21). Appellant entered a plea of guilty in a plea bargain agreement for five (5) years in the Institutional Division of the Texas Department of Corrections. (CR at 126). He timely perfected his appeal (CR at 129).

## STATEMENT OF PROCEDURAL HISTORY

Appellant's brief was filed on November 7, 2014, and his reply to the state's brief was filed on March 2, 2015. The First Court of Appeals affirmed the conviction in an opinion designated for publication. *Hutchins v. State*, _ S.W.3d _, (Tex. App. No. 01-14-00333-CR -- Houston [1st Dist.], delivered Sept. 3, 2015). This petition is due to be filed November 4, 2015, and it is therefore timely filed.

THE FIRST COURT OF APPEALS, IN A 2-1 DECISION, ERRED IN AFFIRMING THE DENIAL OF APPELLANT'S MOTION TO SUPPRESS BECAUSE THE HOLDING WAS ONLY BASED ON OFFICER TESTIMONY THAT APPELLANT GAVE VERBAL CONSENT TO SEARCH AND DID NOT CONSIDER THE TOTALITY OF THE CIRCUMSTANCES.

*HUTCHINS V. STATE*, _S.W.3D _, (TEX. APP. NO. 01-14-00-333-CR – HOUSTON [1ST DIST.], DELIVERED SEPT. 3, 2015).

## ARGUMENT

### BACKGROUND

Officer Smith testified at Appellant's motion to suppress the evidence hearing that he saw Appellant's vehicle exiting and he was not violating any laws at that time. (RR at 7). But he proceeded to follow Appellant for about half a mile before conducting a traffic stop for speeding 5 miles over the 35 mile per hour limit. (RR at 9). Officer Smith stated he approached the vehicle and observed pill bottles in plain view and Appellant said the unexpired prescriptions belonged to him. (RR at 6). According to the officer, Appellant then gave verbal consent to search the vehicle. (RR at 6). Appellant was not given verbal warnings that he had a right to decline the search or asked to sign a written consent form, although the officer routinely carries written consent to search forms in his patrol vehicle. (RR at 10). In contrast, Appellant testified he was not speeding when pulled over and Officer Smith handcuffed him and placed him in the backseat of the patrol car after telling

7

Appellant he was going to search the vehicle. (RR at 14-15). Officer Smith then proceeded to search the trunk of Appellant's vehicle. (RR at 16).

### ANALYSIS

The State carries the burden of proving consent was given freely and voluntarily. *Bumper v. North Carolina*, 391 U.S. 543, 549, 88 S.Ct. 1788, 1792 (1968). In Texas, the State must prove voluntariness by clear and convincing evidence. *Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011). When reviewing voluntariness of consent, appellate courts must use a totality of the circumstances approach and consider numerous factors. (*Id.*). Relevant factors include whether Appellant was in custody, whether Appellant was warned that he had the option to refuse consent, the reaction of Appellant to pressure, and any other factor deemed relevant. *Flores v. State* 172 S.W.3d 742, 749 (Tex. App. – Houston [14th Dist.] 2005, no pet.).

In Appellant's case, the record provides no support for the Court of Appeals to affirm the Trial Court's finding that Appellant consented to search of his vehicle other than Officer Smith merely testifying, "I asked for consent to search his vehicle… he gave me verbal consent" and the findings of fact stating "any possible conflict in Officer Smith's testimony was resolved in favor of seizure of the evidence based upon his credibility and demeanor." (RR at 6; CR Supp. at 4–5). The Court of Appeals did not consider Appellant was not apprised of his right to refuse the search and that the officer made no attempt to obtain written consent in spite of the fact that he had

waiver forms in his patrol car. (RR at 10–11). They did not consider that Appellant testified he was handcuffed and in the back of the patrol car when Officer Smith decided to search without his consent. (RR at 14). Instead, the Court of Appeals held Appellant validly consented to the search because it was supported in the record by the officer's unequivocal testimony that Appellant gave verbal consent to search. (op. pg. 10). Thus departing from the totality of the circumstances review and relying solely on the credibility of the officer's testimony regarding the verbal consent.

Justice Keyes, in her dissent, points out that "affirming the trial court's ruling presents an irresistible incentive for the police to conduct a full warrantless search of any vehicle they choose to pull over for a minor traffic infraction… upon the mere testimony of an officer that the defendant gave verbal consent to search." *Hutchins v. State*, _ S.W.3d _, (Tex. App. No. 01-14-00333-CR -- Houston [1st Dist.], delivered Sept. 3, 2015) (Keyes, E., dissenting). The Court of Appeals is setting a dangerous precedent in this case that could potentially affect all Texas drivers. It is important for this Court to clarify that the totality of the circumstances should be considered by reviewing courts in consent to search cases and that includes whether appellant signed an available waiver form or was admonished of the right to refuse consent.

## PRAYER FOR RELIEF

Wherefore, Premises Considered, Appellant respectfully prays that this Court grant discretionary review and, after full briefing on the merits, issue an opinion reversing the Court of Appeals' judgment and remanding the cause to the trial court.

Respectfully submitted,

**_s/Tonya Rolland McLaughlin**
**Tonya Rolland McLaughlin**
4301 Yoakum Boulevard
Houston Texas 77006
Phone: (713) 529-8500
Fax: (713) 453-2203
TBN 24054176

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Petition for Discretionary Review was e-served to Alan Curry (curry_alan@dao.hctx.net) and to the State Prosecuting Attorney (information@spa.tx.gov).

**_s/Tonya Rolland McLaughlin**
**Tonya Rolland McLaughlin**

Pursuant to proposed Rule 9.4(i)(3), undersigned counsel certifies that this brief complies with the type volume limitations of Tex. R. App. Proc. 9.4(e)(i).

1. This brief contains 1,557 words printed in a proportionally spaced typeface.

2. This brief is printed in a proportionally spaced, serif typeface using Garamond 14 point font in text.

3. Upon request, undersigned counsel will provide an electronic version of this brief and/or a copy of the word printout to the Court.

4. Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in *Tex. R. App. Proc. 9.4(j)*, may result in the Court's striking this brief and imposing sanctions against the person who signed it.

_s/Tonya Rolland McLaughlin
**Tonya Rolland McLaughlin**

**APPENDIX**

*Hutchins v. State*, _ S.W.3d _, (Tex. App. No. 01-14-00333-CR -- Houston [1st Dist.], delivered Sept. 3, 2015).

No *Shepard's* Signal™
As of: November 3, 2015 1:12 PM EST

# *Hutchins v. State*

Court of Appeals of Texas, First District, Houston

September 3, 2015, Opinion Issued

NO. 01-14-00333-CR

**Reporter**
2015 Tex. App. LEXIS 9430

REGINALD HUTCHINS, Appellant v. THE STATE OF TEXAS, Appellee

**Prior History:** [*1] On Appeal from the 230th District Court, Harris County, Texas. Trial Court Case No. 1388778.

# Case Summary

### Overview

HOLDINGS: [1]-In contrast to the officer's testimony, defendant asserted on direct examination that he never gave consent to search his car, and he denied that the officer showed him anything in writing indicating that he had the right to decline to give consent and denied being asked for verbal consent to search; [2]-The validity of defendant's consent was a factual determination that turned on witness credibility, not on an application of the law to the facts; [3]-The officer gave unequivocal testimony that defendant gave verbal consent to the search.

### Outcome

Judgment affirmed.

**Counsel:** FOR APPELLANT: Tonya Rolland McLaughlin, Houston, TX.

FOR STATE: Devon Anderson, District Attorney; Joe Bramanti, Assistant District Attorney, Houston, TX.

**Judges:** Panel consists of Justices Keyes, Bland, and Massengale. Justice Keyes, dissenting.

**Opinion by:** Michael Massengale

# Opinion

Appellant Reginald Hutchins was charged with possession with intent to deliver a controlled substance. *See* TEX.

HEALTH & SAFETY CODE §§ 481.104(a)(4), 481.117(a), (e). He filed a motion to suppress evidence found during a search of his car, which the trial court denied. Pursuant to a plea agreement, Hutchins pleaded guilty to the charged offense and was sentenced to five years in prison.

The trial court found that the search in this case was lawfully conducted on the basis of consent. In this appeal, Hutchins contends that the evidence of consent to the search was conclusory and insufficient to support the court's findings. The validity of a consent to search is a factual determination to be made by the trial court, not a legal determination that we review de novo. Because the record supports the trial court's finding, we affirm.

### Background

While driving his patrol car, Houston Police Officer Leonard Smith saw Reginald Hutchins's car exiting the freeway. Officer Smith followed Hutchins and subsequently stopped him for driving [*2] 40 miles per hour in a 35 mile-per-hour zone. As he approached the car, the officer saw several pill bottles in plain view. Hutchins claimed that the pills were his and gave "verbal consent" to search the car. According to the officer, Hutchins was not under arrest at this time. Hutchins was not given verbal warnings that he had the right to decline the search, nor was he asked to sign a written consent form.

Officer Smith testified to the foregoing version of events at a hearing on a motion to suppress evidence obtained as a result of the search. Hutchins also testified at the suppression hearing, and he offered a different version of events. He testified that he was not going over 35 miles per hour because he had just pulled away from a traffic light. Hutchins testified that the officer took his driver's license and went back to his patrol car. Then the officer returned, asked him to step out of the vehicle, handcuffed him, and placed him in the back seat of the patrol car. When asked whether the officer asked him for verbal consent to search, and whether he in fact gave consent to search, Hutchins responded "No, sir."

The officer searched the trunk and wheel well of the car and found **[*3]** hydrocodone, which became the basis of Hutchins's conviction. The pills that the officer originally saw in plain view were later determined to be lawfully prescribed to Hutchins.

The motion to suppress was denied. At Hutchins's request, the trial court issued findings of fact and conclusions of law. The court found that "Officer Smith asked [Hutchins] if he could search his vehicle," and that he "freely and voluntarily gave verbal consent to search his vehicle." As part of a plea bargain with the State, Hutchins pleaded guilty to the charged offense in exchange for a recommended punishment of five years in prison. The trial court entered a judgment sentencing Hutchins to the recommended five years in prison, and this appeal followed.

## Analysis

In his sole issue, Hutchins argues that the record does not support the court's findings that he consented to the search of his car and that this consent was given freely and voluntarily. Therefore, Hutchins contends, the trial court erred by denying his motion to suppress evidence found in the trunk and wheel well of the car.

When reviewing a trial court's ruling on a motion to suppress, we review the evidence "in the light most favorable to the **[*4]** trial court's ruling." *State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)*. When a trial court makes explicit findings of fact, we must determine whether the evidence supports these fact findings. *Id.* We afford "almost total deference" to a trial judge's determination of the historical facts that the record supports. *State v. Garcia—Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)*. Next, we review the trial court's legal ruling de novo unless the court's explicit factual findings that are supported by the record are also dispositive of the legal ruling. *Kelly, 204 S.W.3d at 818*.

A search conducted without a warrant based on probable cause is per se unreasonable, "subject to only a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043, 36 L. Ed. 2d 854 (1973)*; *Meekins v. State, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011)*. One exception is a search conducted with a person's voluntary consent. *Meekins, 340 S.W.3d at 458*.

Before a consent to search is deemed effective, the State must prove that the consent was freely and voluntarily given. *Meeks v. State, 692 S.W.2d 504, 509 (Tex. Crim. App.*

*1985)* (citing *Bumper v. North Carolina, 391 U.S. 543, 548, 88 S. Ct. 1788, 1792, 20 L. Ed. 2d 797 (1968))*. In Texas, the State carries the burden to establish a valid consent to search by "clear and convincing" evidence. *Meekins, 340 S.W.3d at 459*. "The burden requires the prosecution to show the consent given was positive and unequivocal and there must not be duress or coercion, actual or implied." *Meeks, 692 S.W.2d at 509*; *see also Brown v. State, 212 S.W.3d 851, 869 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd)*.

"The validity of a consent to search is a question of fact to be determined from all **[*5]** the circumstances." *Meekins, 340 S.W.3d at 458* (citing *Schneckloth, 412 U.S. at 226-27, 93 S. Ct. at 2047*). Resolving a question about the voluntariness of a consent requires the trial court to "conduct a careful sifting and balancing of the unique facts and circumstances of each case." *Id. at 459*. In doing so, courts consider various factors, including: whether the consenting person was in custody, whether the person was arrested at gunpoint, the constitutional advice given to the person, the length of the detention, the repetitiveness of the questioning, and the use of physical punishment. *See Flores v. State, 172 S.W.3d 742, 749-50 (Tex. App.—Houston [14th Dist.] 2005, no pet.)*. Because voluntariness is a fact-intensive determination, the trial court's finding must be accepted on appeal unless it is clearly erroneous. *Meekins, 340 S.W.3d at 460*.

The Court of Criminal Appeals has explained that the clear-and-convincing-evidence standard "deals with the quantity and quality of evidence to establish that a person did, in fact, consent to a search." *Id. at 459 n.24*. It does not concern the "separate, but not legally determinative, issue of 'how' a person consented—clearly, convincingly, positively, unequivocally, and so forth." *Id.* Even "[m]ere acquiescence" may support a finding of consent. *Id. at 463-64* (quoting *Kelly, 204 S.W.3d at 820-21*). To ensure that the correct legal issue is addressed, the Court of Criminal Appeals has **[*6]** instructed that we frame the issue as: "Could a rational trier of fact conclude, by clear and convincing evidence (less than beyond a reasonable doubt), based upon all of the facts and logical inferences that can be drawn from those facts, and in the light most favorable to the prosecution, that [the appellant] voluntarily consented to the search?" *Id. at 459 n.24* (citing *Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979))*.

In this case, the evidence adduced regarding the validity of consent consists of the testimony of Officer Smith and Hutchins. On direct examination, the prosecutor asked the police officer about receiving consent to search the vehicle, as well as whether the officer provided Hutchins with a written form or verbal warnings:

Prosecutor: Officer Smith, you mentioned that you approached the defendant and . . . saw the bottles in plain view. What happened after that?

Officer: I asked him to step out of the vehicle and I also requested consent to search his vehicle.

Prosecutor: And at what point did you request his consent to search? Was he still in the vehicle at that time?

Officer: Yes, ma'am, he was.

Prosecutor: And what exactly, if you recall, did you say?

Officer: I asked him for consent. . . . Usually what I ask is, is there anything **[*7]** illegal in the vehicle. And I asked him about the pills, which he said were his. And I asked for consent to search the vehicle.

Prosecutor: And what was the defendant's reply?

Officer: He gave me verbal consent.

Defense counsel asked about written consent forms and verbal warnings on cross-examination, and the prosecutor raised the issue again on redirect:

Defense Counsel: Do you . . . usually keep in your possession while you are on patrol written consent-to-search forms?

Officer: Yes, sir.

Defense Counsel: Did you use or offer to Mr. Hutchins a written consent-to-search form on this occasion?

Officer: No, sir, I did not.

Defense Counsel: Does the written consent-to-search form indicate that consent is voluntary and that the request to search this—that the person has the right to decline to give you consent?

Officer: Yes, sir.

Defense Counsel: And you did not show that written form to Mr. Hutchins on this occasion, did you?

Officer: No, sir.

Defense Counsel: Did you give him verbal warnings that he had the right to decline the search?

Officer: No, sir.

. . . .

Prosecutor: Officer Smith, why didn't you ask the defendant to fill out a written consent-to-search form?

Officer: I had already asked him **[*8]** for consent and he gave consent.

In contrast to the officer's testimony, Hutchins asserted on direct examination that he never gave consent to search his car. He denied that the officer showed him anything in writing that indicated he had the right to decline to give consent. He denied being asked for verbal consent to search.

Emphasizing that the State had to show by clear-and-convincing evidence that his consent was unequivocal and voluntary, Hutchins argues that the officer's testimony—that he "gave . . . verbal consent"—is insufficient to satisfy the State's burden. He asserts that the officer's credibility is not at issue in this case; rather, he contends that the testimony, even if credited by the factfinder, cannot support the trial court's finding that consent was freely, voluntarily, and unequivocally given.

Hutchins relies upon *Ford v. State, 158 S.W.3d 488 (Tex. Crim. App. 2005)*, and he reasons by analogy that the officer's assertion that he gave "verbal consent" is a legal conclusion that fails to provide underlying facts necessary to support the conclusion. In *Ford*, the Court of Criminal Appeals held that an officer's "conclusory statement" that a defendant was "following too close" behind another vehicle could not support **[*9]** a finding of reasonable suspicion to initiate a traffic stop. *Ford, 158 S.W.3d at 493*. Because reasonable suspicion requires specific, articulable facts that would lead an officer to conclude that a particular person is, has been, or will be engaged in criminal activity, the Court held the officer's testimony was insufficient due to its lack of objective factual support. *Id. at 493-94*; *see also State v. Garcia, No. 03-14-00048-CR, 2014 Tex. App. LEXIS 9624, 2014 WL 4364623, at *4 (Tex. App.—Austin, Aug. 28, 2014, no pet.)*(mem. op.)(conclusory allegation of "possible intoxication" was insufficient to support reasonable suspicion to justify detention, even when combined with an allegation of swerving).

Hutchins's analogy fails, however, because in the circumstances of this case, the validity of his consent was a factual determination that turned on witness credibility, not on an application of the law to the facts. Whether an officer had reasonable suspicion to detain a defendant, as was at issue in *Ford*, subsumes a legal determination that we review de novo after giving deference to the trial court's findings of fact underlying that conclusion. *See State v. Sheppard, 271 S.W.3d 281, 291-92 (Tex. Crim. App. 2008)* (stating that factual findings include "who did what, when, where, how, or why," as well as credibility determinations, but "do not include legal rulings on 'reasonable suspicion'

or 'probable cause'; **[\*10]** those are legal conclusions subject to de novo review, not deference"). The validity of consent to search, by contrast, is "a question of fact to be determined from all the circumstances." *Meekins, 340 S.W.3d at 458*.

The trial court's factual finding is not undermined by the evidence that the officer did not offer verbal warnings or a written consent form to Hutchins. While "the showing of a warning is of evidentiary value in determining whether a valid consent was given," such a warning "is not required nor essential." *Meeks, 692 S.W.2d at 510*. Furthermore, to the extent that Hutchins argues that the trial court's finding was erroneous because the officer's testimony did not affirmatively demonstrate that his consent went beyond mere acquiescence, *Meekins* instructs that even a finding of "'[m]ere acquiescence' may constitute a finding of consent." *Meekins, 340 S.W.3d at 463-64*.

In accordance with the established standard of review on a motion to suppress, we afford "almost total deference" to the court's factual determination that Hutchins validly consented to the search. *State v. Garcia—Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)*. That determination was supported in the record by the officer's unequivocal testimony that Hutchins gave verbal consent to the search. Because the court's finding is not "clearly **[\*11]** erroneous" when viewed in the light most favorable to the prosecution, we accept it on appeal. *Meekins, 340 S.W.3d at 459 n. 24, 460*.

## Conclusion

We affirm the trial court's judgment.

Michael Massengale

Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Justice Keyes, dissenting.

Publish. *Tex. R. App. P. 47.4*.

**Dissent by:** Evelyn V. Keyes

# Dissent

## DISSENTING OPINION

This case requires us to determine whether there was clear and convincing evidence to support the trial court's finding that appellant, Reginald Hutchins, "verbally consented" to the warrantless search of his automobile that turned up the evidence upon which he was subsequently convicted of possession of a controlled substance with intent to deliver. *See Tex. Health & Safety Code Ann. § 481.104(a)(4)* (Vernon Supp. 2014); *id. § 481.114(a)* (Vernon 2010). The majority affirms the trial court's denial of Hutchins' motion to suppress based *solely* on the trial court's finding that the police officer's testimony that Hutchins gave him verbal consent to conduct the search was "credible." It does not consider the totality of the circumstances. I believe that affirming the trial court's ruling presents an irresistible incentive for the police to conduct a full warrantless search of any vehicle they choose to pull over **[\*12]** for a minor traffic infraction—here, going forty miles per hour in a thirty-five-mile-per-hour zone—upon the mere testimony of an officer that the defendant gave verbal consent to the search. I therefore respectfully dissent.

## Background

At the suppression hearing, Houston Police Department Officer L. Smith testified that he pulled Hutchins over for driving forty miles per hour in a thirty-five-mile-per-hour zone. As he approached the car, he saw two pill bottles in plain view. Hutchins confirmed the pills were his. Officer Smith testified that he asked Hutchins for consent to search his vehicle and Hutchins gave him verbal consent. He did not give Hutchins verbal warnings that he had the right to decline the search and did not ask him to sign a written consent form, even though he had the forms with him in his patrol car. He did not give Hutchins a ticket for speeding. Officer Smith testified that Hutchins was detained but not under arrest at the time he allegedly consented to the search and that he asked Hutchins to get out of the car, which Hutchins did. Officer Smith then placed him in the back seat of his patrol car and searched the vehicle.

Hutchins testified that he was not going **[\*13]** over thirty-five miles per hour because he had just pulled away from a traffic light. He testified that Officer Smith stopped him, asked for his driver's license, and took it back to his patrol car. Officer Smith then returned, asked Hutchins to step out of the vehicle, asked him what he was doing, told him he need to search Hutchins' vehicle, handcuffed him, and placed him in the back seat of his patrol car. When asked whether Officer Smith requested verbal consent to search, whether Smith showed him anything in writing, and whether he in fact gave consent to search, Hutchins responded, "No, sir." He also testified that he did not feel free to leave.

Hutchins testified that Officer Smith then searched the front of his car and found two pill bottles, "my two bottles in my

name in the armrest." Officer Smith brought them back to the patrol car and asked Hutchins about them, saying they were expired. Hutchins told him that he was looking at the wrong date and that they were not expired. Officer Smith then returned to the car, again without asking for consent to search, opened the trunk and appeared to go into the wheel well of the trunk, but Hutchins could not be certain because he could [*14] not see all the way into the trunk from where he was sitting in the back seat of the patrol car.

After denying Hutchins' motion to suppress, the trial court entered findings with respect to certain historical facts. The pertinent historical findings were that:

- "Officer Smith observed two pill bottles in the front seat of Defendant's vehicle in plain view";

- "Defendant advised that the pill bottles were prescribed to him";

- "Officer Smith asked Defendant if he could search his vehicle";

- "Defendant freely and voluntarily gave verbal consent to search his vehicle";

- "Officer Smith began searching the Defendant's vehicle and confirmed that the two pill bottles found in the front seat belonged to Defendant";

- "Officer Smith continued to search the Defendant's vehicle and discovered in the trunk in plain view a tan fiesta bag";

- "Officer Smith could see in plain view two additional white bags in the tan fiesta bag that are normally used to hold prescription bottles";

- "Officer Smith observed 3 additional pill bottles inside of the white bags";

- "1 pill bottle was prescribed to Veronica Jacobs";

- "[T]he 2 other pill bottles had no prescription label"; and

- "Officer Smith continued to search the [*15] trunk area and found another pill bottle with no prescription label under a board that covers the spare tire area."

The trial court then found "based upon Officer [Smith's] testimony and demeanor during his testimony . . . that Officer [Smith] conducted the search of the vehicle driven by Defendant in good faith" and that "Officer [Smith] did not exceed the scope of a permissible search under the circumstances presented."

## Discussion

The test for voluntary consent to search is not merely based on the trial court's estimation of the credibility of the officer who conducted the search, but on the totality of the circumstances of the search; and the officer's testimony does not outweigh all other evidence and make a full search of a person's vehicle legal all by itself. Most importantly, the State must prove by "clear and convincing evidence" that the consent was "freely and voluntarily" given. I do not think the facts of this case support such a conclusion.

For search and seizure issues, the appellate courts "engage in a mixed review," giving "almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation [*16] of credibility and demeanor while we review *de novo* application-of-law-to-fact questions that do not turn upon credibility and demeanor." *Johnson v. State, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002)*. When the trial court makes explicit findings of fact, the appellate court must give deference to those findings. *State v. Sheppard, 271 S.W.3d 281, 286 (Tex. Crim. App. 2008)*. Likewise, when the trial court makes an explicit credibility finding, the appellate court must give deference to that credibility determination. *Id.* However, "[a]ppellate courts review the legal determination of detention, reasonable suspicion, and probable cause under the *Fourth Amendment de novo* . . . ." *Id. at 286-87*. Because consent issues are necessarily fact intensive, a trial court's finding of voluntariness must be accepted on appeal unless it is clearly erroneous. *Meekins v. State, 340 S.W.3d 454, 460 (Tex. Crim. App. 2011)*.

### 1. Voluntary Consent to Search

As the majority states, a warrantless search, even if based on probable cause, is *per se* unreasonable, subject to a few specifically established and well-delineated exceptions. *Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043, 36 L. Ed. 2d 854 (1973)*; *Meekins, 340 S.W.3d at 458*. One exception is a search conducted with a person's free and voluntary consent. *Meekins, 340 S.W.3d at 458* (citing *Schneckloth, 412 U.S. at 219, 93 S. Ct. at 2043-44*).

Consent to search may be communicated to law enforcement in a variety of ways, "[b]ut the *Fourth* and *Fourteenth Amendments* require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force." *Id. at 458-59* [*17] (quoting *Schneckloth, 412 U.S. at 228, 93 S. Ct. at 2048*). "The validity of a consent to search is a question of fact to be determined from all the circumstances." *Id. at 458* (citing *Schneckloth, 412 U.S. at*

*226, 93 S. Ct. at 2047*). Resolving a question about the voluntariness of a consent requires the trial court to "conduct a careful sifting and balancing of the unique facts and circumstances of each case." *Id. at 459*. The ultimate question is whether the suspect's "will ha[s] been overborne and his capacity for self-determination critically impaired," so that his consent to the search "must have been involuntary." *Id.* (quoting *United States v. Watson, 423 U.S. 411, 424, 96 S. Ct. 820, 828, 46 L. Ed. 2d 598 (1976))*. "[K]nowledge of a right to refuse is not a prerequisite of a voluntary consent." *Schneckloth, 412 U.S. at 234, 93 S. Ct. at 2051*. However, "the showing of a warning is of evidentiary value in determining whether a valid consent was given." *Meeks v. State, 692 S.W.2d 504, 510 (Tex. Crim. App. 1985)*. If, under all the circumstances, it appears that the consent was involuntary, "that it was coerced by threats or force, or granted only in submission to a claim of lawful authority," then the consent is invalid and the search is unreasonable. *Schneckloth, 412 U.S. at 233, 93 S. Ct. at 2051*.

"[T]he prosecution must prove by clear and convincing evidence that the consent was freely and voluntarily given" before the consent to search is deemed effective. *Meeks, 692 S.W.2d at 509* (citing *Bumper v. North Carolina, 391 U.S. 543, 548, 88 S. Ct. 1788, 1792, 20 L. Ed. 2d 797 (1968))*. "The [clear and convincing evidence] burden requires the prosecution to show the consent given was *positive and unequivocal* and there *must not be duress or coercion, actual or implied*." *Id.* (emphasis added); *see Brown v. State, 212 S.W.3d 851, 869 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd)*. "[T]he standard for measuring the scope of consent under the *Fourth Amendment* is that of '*objective' reasonableness*—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Meekins, 340 S.W.3d at 459* (emphasis added) (quoting *Florida v. Jimeno, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803-04, 114 L. Ed. 2d 297 (1991))*. This inquiry is made "from the point of view of the objectively reasonable person, without regard for the subjective thoughts or intents of either the officer or the citizen." *Id.*

### 2. Totality of the Circumstances

Here, the circumstances under which Hutchins' consent to search his automobile was obtained were as follows. Officer Smith's search of Hutchins' automobile initially took place within the context of a *Terry* stop based on Smith's observation of two prescription pill bottles in plain view in the armrest of Hutchins' car when he stopped Hutchins for driving **[*18]** forty miles per hour in a thirty-five-mile-per-hour zone. Hutchins confirmed the pills were his. Officer Smith testified that he obtained verbal consent from Hutchins to search his car. He did not advise Hutchins that he had the right not to consent to the search, and he did not give Hutchins a consent form to sign although he had the forms in his patrol car. After Officer Smith obtained consent to the search, he handcuffed Hutchins and placed him in the backseat of his patrol car before beginning the search, admitting that at that point Hutchins was detained and thus not free to leave. Officer Smith then searched the armrest, obtained the pill bottles, and verified they were unexpired prescriptions in Hutchins' name. He then continued to search Hutchins' vehicle while Hutchins remained under detention in the back seat of the patrol car and discovered contraband prescription pills in the trunk and wheel well.

"An officer may conduct a brief investigative detention, or '*Terry* stop,' when he has a reasonable suspicion to believe that an individual is involved in criminal activity." *Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002)* (citing *Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968))*; *Carmouche v. State, 10 S.W.3d 323, 328 (Tex. 2000)*. The reasonableness of the temporary detention "must be examined in terms of the totality of **[*19]** the circumstances and will be justified when the detaining officer has specific articulable facts, which, taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity." *Balentine, 71 S.W.3d at 768*; *Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997)*. "The reasonableness of the detention . . . depends on whether the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly." *Balentine, 71 S.W.3d at 770*. "An investigative detention must be temporary and the questioning must last no longer than is necessary to effectuate the purpose of the stop." *Id. at 770*.

The "plain view" doctrine may confer on an officer the authority to conduct an investigative detention. *See Baldwin v. State, 278 S.W.3d 367, 372 (Tex. Crim. App. 2009)*. The "plain-view" doctrine permits an officer with prior justification for an intrusion of privacy to seize evidence incriminating the accused that the officer observes in plain view without having to obtain a warrant for that evidence. *Horton v. California, 496 U.S. 128, 135-36, 110 S. Ct. 2301, 2307, 110 L. Ed. 2d 112 (1990)*; *Walter v. State, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000)* ("While searches conducted without a warrant are *per se* unreasonable, seizing contraband in plain view does not run afoul of the *Fourth Amendment*.").

The "plain view" doctrine requires only that the officer "did not violate the *Fourth Amendment* in arriving at the place

[*20] from which the evidence could be plainly viewed″ and that it be ″immediately apparent that the item seized constitutes evidence, that is, there is probable cause to associate the item with criminal activity.″ *Walter, 28 S.W.3d at 541*. ″What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused.″ *Horton, 496 U.S. at 135, 110 S. Ct. at 2307*. But ″the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges.″ *Id. at 136, 110 S. Ct. at 2307*.

### 3. Analysis

To prove by clear and convincing evidence that Hutchins' consent to search his entire car, including the trunk, was valid, the State was required to prove that an objectively reasonable person would have understood from the totality of the circumstances that Hutchins' consent was freely and voluntarily given and was not the result of duress or coercion, actual or implied, or granted only in response to an assertion of lawful authority. [*21] *See Schneckloth, 412 U.S. at 233, 93 S. Ct. at 2051*; *Meekins, 340 S.W.3d at 458-59*; *Meeks, 692 S.W.2d at 509*.

In my view, the claim that an *objectively* reasonable person could have believed that Hutchins freely and voluntarily gave Officer Smith valid verbal consent to make this search of the entire automobile is impossible to sustain under the totality of the circumstances of this case. *See Meekins, 340 S.W.3d at 459* (″[T]he standard for measuring the scope of consent under the *Fourth Amendment* is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?″).

The *only* justification for Officer Smith's illegal search of Hutchins' vehicle was his stated subjective belief that Hutchins had freely and voluntarily consented to the full search of his car, including the car's trunk and wheel well. Officer Smith testified that when he pulled Hutchins over for driving forty miles per hour in a thirty-five-mile-per-hour zone he observed two prescription bottles in Hutchins' armrest. Although Hutchins told him the prescription drugs were his, Officer Smith could reasonably have believed that the pills were contraband and thus would have been justified in initiating a *Terry* stop to determine whether the pills were, in fact, evidence of illegal activity. [*22] *See Balentine, 71 S.W.3d at 768* (stating that officer may conduct *Terry* stop when he has reasonable suspicion that individual is involved in criminal activity). Indeed, it is hard to conceive of any reason for Officer Smith to have asked Hutchins for consent to search his car other than the officer's having seen the prescription pills in plain view in the armrest, and the evidence supports no other reasonable inference.

The record shows that Officer Smith did initiate a *Terry* stop, told Hutchins to step out of the vehicle, handcuffed him, placed him in the back of his patrol car, and went back to search Hutchins' car and retrieve the pills. Officer Smith testified that at that time Hutchins was ″detained″ but not under arrest. This evidence undermines Officer Smith's testimony and the trial court's finding that Hutchins' consent was freely and voluntarily given as opposed to being obtained pursuant to Smith's assertion of lawful authority to search the vehicle. Thus, these facts weigh against a finding that Hutchins freely and voluntarily consented to the search of his vehicle. *See Schneckloth, 412 U.S. at 233, 93 S. Ct. at 2051* (holding that if, under all circumstances, it appears that consent was ″granted only in submission to a claim of lawful authority,″ [*23] consent is invalid).

Officer Smith also testified that he had in his patrol car—but did not give to Hutchins—consent-to-search forms. And he testified that he did not inform Hutchins of his right to refuse to consent to a search of his vehicle. This is evidence that Officer Smith had the ability to verify the verbal consent to search he testified Hutchins gave him and thus also argues against an objectively reasonable belief that Hutchins freely and voluntarily gave consent to search the vehicle. Likewise, Hutchins' unrebutted testimony that Officer Smith handcuffed him prior to the search is evidence that any consent given was coerced and given only in submission to the lawful authority to search the car that Officer Smith projected. *See id.*

Officer Smith then searched the front of the car, retrieved the two pill bottles, and immediately took them to Hutchins, who verified that they were unexpired prescriptions in his name. At that point, any further search became objectively unreasonable in the absence of clear and convincing evidence that Hutchins had consented to a full search of his car. *See Balentine, 71 S.W.3d at 768-70* (stating that ″[a]n investigative detention must be temporary and the questioning must last [*24] no longer than is necessary to effectuate the purpose of the stop″). There was no evidence that Hutchins had been or was engaged in any illegal activity. Thus, Officer Smith ″lacked probable cause to search for non-weapon contraband or other evidence.″ *See Baldwin, 278 S.W.3d at 371-72* (stating that when conditions

justifying "plain view" search "are not present, an officer conducting a valid investigative detention must have probable cause in order to conduct a search for non-weapon contraband or other evidence").

At the point at which Officer Smith conducted the full search of Hutchins' car that turned up the evidence of contraband, the *only* justification for the further detention of Hutchins and the full search of his vehicle was an objectively reasonable belief that Hutchins had freely and voluntarily given him consent to conduct a full search of his vehicle without doing so in submission to lawful authority or by coercion, actual or implied, even though Officer Smith testified that Hutchins was detained when handcuffed and placed in the back of the patrol car prior to any search. *See Meekins, 340 S.W.3d at 459* (scope of consent is objectively unreasonable when typical reasonable person would not have understood defendant to have consented **[*25]** to full search).

Given the totality of the circumstances, I can only conclude that the State fell short of carrying its burden of showing by clear and convincing evidence that Hutchins gave "positive and unequivocal" consent to a full search of his automobile without "duress or coercion, actual or implied"—consent that an objectively reasonable person observing the exchange would believe to have been freely and voluntarily given. *See Meeks, 692 S.W.2d at 509*; *see also Schneckloth, 412 U.S. at 233, 93 S. Ct. at 2051* (consent that was "coerced by threats or force, or granted only in submission to a claim of lawful authority" is invalid and search is unreasonable); *Meekins, 340 S.W.3d at 459* (scope of consent is objectively unreasonable when typical reasonable person would not have understood defendant to have consented to full search).

As evidence of consent, the State presented only Officer Smith's testimony that Hutchins consented to the search. Hutchins, on the other hand, in addition to denying that he consented to the search, presented evidence that while conducting the search, Officer Smith kept him handcuffed in the back of his patrol car, not having advised him of his right not to consent to the search and not having confirmed Hutchins' free and voluntary consent to the search **[*26]** by asking him to sign the consent form Officer Smith had with him. And the search itself was unconstitutional unless conducted with the free and voluntary consent Officer Smith testified that Hutchins gave him.

**Conclusion**

I find this case very troubling. It signals that a police officer's credible testimony that a defendant's free and voluntary consent to a warrantless and otherwise illegal search is sufficient by itself to establish by clear and convincing evidence the legality of the search and to justify seizure of contraband as constitutionally permissible when all other evidence necessary to establish that the consent was voluntary from the totality of the circumstances undermines that conclusion. I would hold that the evidence in this case is insufficient to show clearly and convincingly that Hutchins freely and voluntarily consented to the search that turned up the evidence of the contraband upon which he was convicted. Therefore, I would hold that Officer Smith's full search of Hutchins' vehicle was an illegal search in violation of the *Fourth Amendment* and that the evidence of contraband seized was inadmissible as the fruit of an illegal search in contravention of the *Fourth Amendment*.

I would reverse the trial **[*27]** court's denial of Hutchins' motion to suppress, and I would remand the case to the trial court for proceedings consistent with this opinion.

Evelyn V. Keyes

Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Justice Keyes, dissenting.

Publish. *Tex. R. App. P. 47.2(b)*.