

# NUMBER 13-20-00042-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

GROVER MELTON,                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                              Appellee.

## On appeal from the County Court at Law
## of Navarro County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes
Memorandum Opinion by Justice Perkes**

Appellant Grover Melton appeals his conviction of possession of a controlled

substance (Methamphetamine), penalty group one, in an amount between one and four

grams, a third-degree felony.[1] *See* Tex. Health & Safety Code Ann. §§ 481.102(6), 481.115(c). By what we construe as two issues, appellant argues the trial court abused its discretion in denying his motion to suppress evidence because (1) appellant was in custody when he made incriminating statements, and (2) officers searched his home absent an exception to the search warrant requirement. We affirm.

## I.   BACKGROUND

Appellant was stopped in his driveway following an observed traffic violation, and he was subsequently arrested and convicted of the aforementioned offense. At a motion to suppress hearing, appellant contended his home was searched without a warrant or exception to the warrant requirement, and he was, at all relevant times, in custody and officers failed to administer *Miranda*[2] warnings, rendering his statements inadmissible.

Sergeant Rickey Ragan, a narcotics officer with the Navarro County Sheriff's Office, testified that he and Lieutenant Clint Andrews stopped appellant after appellant failed to signal while turning into his driveway. Ragan stated he informed appellant of the reason for the stop and thereafter advised appellant that he had received a "narcotics complaint for the location, [appellant's] residence." According to Ragan, appellant promptly admitted to keeping "maybe a few grams" of marijuana in the home.

"At that point[,] I asked him if he would be willing to show me the marijuana that he did have inside," testified Ragan, who stated that appellant answered affirmatively, exited

---

[1] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* Tex. Gov't Code Ann. § 73.001. Because this is a transfer case from the Waco Court of Appeals, we are bound to apply the precedent of the Waco Court of Appeals to the extent it differs from our own. *See* Tex. R. App. P. 41.3.

[2] *See Miranda v. Arizona*, 384 U.S. 463, 444 (1966).

2

the vehicle, and escorted Ragan into his home. Once inside, appellant walked to the kitchen, retrieved a jar containing marijuana, and provided it to Ragan. Ragan testified:

> Once . . . he had provided the marijuana to me, I asked if I could search, do a further search of the house to locate any other further contraband, and at that point he said—he denied consent and he said that—I had talked to him about the marijuana, he had given it to me, and he said he felt like that was enough at that point.

Ragan testified he then placed handcuffs on appellant and obtained a search warrant.[3]

On cross-examination, Ragan was asked how he was certain he had received consent to enter appellant's home.

Q. What about his response made you think he was consenting for you to enter into the home? Did he say, "Yeah, come on in"?

A. As we were approaching the house, I said, "Do you mind if I come in?" And he said, "Yes, sir."

. . . .

Q. Is it possible that [appellant] was just going to go in the house, retrieve the marijuana and just bring it right back out to you?

A. I don't know what he was thinking at that point. That's why I had asked him if I could come in the house with him.

Ragan testified that had appellant denied him entry into the home at the outset, he would have "immediately applied for a search warrant before a judge and went that route."

Andrews testified that while Ragan was speaking to appellant, he initiated contact with a female, later identified as appellant's common-law wife, Ashley Monroe, outside the home on the front porch. "I advised who I was to the female, advised her why we were at the location, asked her if there was anyone else inside the residence," said Andrews. "I asked her if she would mind walking me through the residence to ensure that there was

---

[3] In executing the warrant, officers located additional contraband, including methamphetamine.

no [one] else there for officer safety." Andrews testified Monroe permitted him to do so. While he did not find any other individuals, Andrews testified he observed some marijuana in the kitchen area. Andrews stated he exited the residence, and he and Monroe were still standing on the front porch when Ragan approached the residence with appellant. Andrews testified he then informed Ragan as to what he had observed, and Ragan responded by stating appellant had just "told him there was marijuana inside the residence."

Appellant also testified during the suppression hearing. He maintained that, contrary to Ragan's testimony, he never provided Ragan with permission to enter his residence, and "as far as [he is] concerned," Monroe did not have any authority to permit Andrews to enter the home. Appellant reasoned that although Monroe had resided there for "a long time," her name was not on the deed.

Appellant testified that the entire encounter with Ragan made him "extremely nervous." He stated Ragan kept "his hand on his pistol the entire time." Appellant testified that while he and Ragan were speaking at the vehicle, he saw Andrews briefly enter the residence with Monroe. Appellant testified that Andrews "yelled across the yard to us," informing Ragan that he had seen "roaches in plain view." Appellant stated, "They took me in the house," and once inside, "I told him it was right there[.] I believe I did hand it to him." When asked by his counsel if he "enter[ed] the home on [his] own free will," appellant answered, "Yes, sir. I couldn't say that I was forced in there, no, sir."

Following the hearing, the trial court denied appellant's motion to suppress. The case proceeded to trial, and a jury found appellant guilty of the indicted offense. Appellant was sentenced to two years' incarceration. This appeal followed.

4

## II. Motion to Suppress

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *State v. Arellano*, 600 S.W.3d 53, 57 (Tex. Crim. App. 2020) (citing *Weems v. State*, 493 S.W.3d 574, 577 (Tex. Crim. App. 2016)). We afford almost total deference to a trial court's findings of historical fact and determinations of mixed questions of law and fact that turn on credibility and demeanor if they are reasonably supported by the record. *Id.*; *Sims v. State*, 569 S.W.3d 634, 640 (Tex. Crim. App. 2019). We review de novo a trial court's determination of legal questions and its application of the law to facts that do not turn upon a determination of witness credibility and demeanor. *Arellano*, 600 S.W.3d at 57. When, as here, the trial court fails to issue findings of fact, we view the evidence in the light most favorable to the trial court's ruling and presume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018). The trial court's ruling will be sustained if it is correct on any applicable theory of law and the record reasonably supports it. *State v. Ruiz*, 581 S.W.3d 782, 785 (Tex. Crim. App. 2019).

## III. *Miranda* Warnings

By his first issue, appellant argues he "should have been read his *Miranda* rights prior to any questioning" because the routine traffic stop evolved into a custodial interrogation, and the officer's failure to administer his warnings rendered his incriminating statements inadmissible. *See Miranda v. Arizona*, 384 U.S. 463, 444 (1966).

### A. Applicable Law

A defendant seeking the suppression of a statement on *Miranda* grounds has the threshold burden of clearly establishing that his statements were given during custodial

interrogation before the burden shifts to the State to show compliance with *Miranda*. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007); *see Miranda*, 384 U.S. at 444. A person is "in custody" for *Miranda* purposes when there is either (1) a formal arrest or (2) "a restraint on the person's freedom of movement to the degree an objectively reasonable person would otherwise associate with a formal arrest." *State v. Saenz*, 411 S.W.3d 488, 496 (Tex. Crim. App. 2013); *see also J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011) ("Because these measures protect the individual against the coercive nature of custodial interrogation, they are required 'only where there has been such a restriction on a person's freedom as to render him 'in custody.'" (quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994))).

The Texas Court of Criminal Appeals has recognized at least four general situations that may constitute custody: (1) the suspect is physically deprived of his or her freedom of action in any significant way, (2) a law enforcement officer tells the suspect that he or she cannot leave, (3) law enforcement officers create a situation that would lead a reasonable person to believe that his or her freedom of movement has been significantly restricted, and (4) there is probable cause to arrest and law enforcement officers do not tell the suspect that he or she is free to leave. *Saenz*, 411 S.W.3d at 496; *see Hawkins v. State*, 592 S.W.3d 602, 610 (Tex. App.—Corpus Christi–Edinburg 2020, pet. ref'd). "We evaluate 'custody' 'on an ad hoc basis, after considering all of the (objective) circumstances' and apply the 'reasonable person' standard." *Herrera*, 241 S.W.3d at 532 (quoting *Dowthitt v. State*, 931 S.W.2d 244, 254–55 (Tex. Crim. App. 1996)); *see J.D.B.*, 564 U.S. at 270. In other words, the subjective views of the

6

interrogating officer and the person being questioned are irrelevant. *J.D.B.*, 564 U.S. at 270–71; *Dowthitt*, 931 S.W.2d at 255.

## B.    Discussion

It is undisputed that appellant was not given *Miranda* warnings until after he was formally arrested. *See Miranda*, 384 U.S. at 444. Therefore, our inquiry is whether appellant was under custodial interrogation prior to his arrest when he made the statements he now seeks to suppress.

On appeal, appellant points to what he alleges to be several factors indicating he had been subjected to a custodial interrogation: (1) Ragan's vehicle partially blocked appellant's vehicle in the driveway; (2) Ragan kept "his hand on his pistol the entire time;" (3) Ragan questioned appellant regarding his possession of narcotics; and (4) appellant observed Andrews enter his residence.[4] *See Saenz*, 411 S.W.3d at 496; *Hawkins*, 592 S.W.3d at 610. However, a consideration of the entire circumstances surrounding appellant's detention does not support a finding of restraint to the degree associated with a formal arrest. *See Saenz*, 411 S.W.3d at 496.

Ragan denied that he ever placed his hand on his weapon during the encounter; the trial court was entitled to believe that testimony and disbelieve appellant's testimony to the contrary. *See Arellano*, 600 S.W.3d at 57. Additionally, the exchange between Ragan and appellant was brief, and appellant was at no point physically restrained. *See State v. Ortiz*, 382 S.W.3d 367, 374 (Tex. Crim. App. 2012) ("A normal traffic stop is a non-custodial detention because it is brief and relatively non-coercive."); *Dowthitt,* 931 S.W.2d at 255–57 (observing that "the length of interrogation" was indicative in

---

[4] Appellant maintains on appeal that the latter led him to believe "an investigation beyond a traffic stop was underway and that he was in custody."

7

determining whether the interrogation was custodial); *see also Schmude v. State*, No. 13-12-00320-CR, 2014 WL 3926749, at *10 (Tex. App.—Corpus Christi–Edinburg May 29, 2014, pet. ref'd) (mem. op., not designated for publication) ("Questioning during a traffic stop mitigates the danger presented under *Miranda* because traffic stops are presumptively brief and temporary."); *Thompson v. State*, No. 10-12-00279-CR, 2013 WL 2399147, at *5 (Tex. App.—Waco May 30, 2013, pet. ref'd) (mem. op., not designated for publication) (finding that appellant was not under custodial detention where, in part, "appellant was not placed in handcuffs, nor did the officers tell appellant that he could not leave"); *Nicholson v. State*, No. 05-00-01401-CR, 2001 WL 515919, at *3 (Tex. App.—Dallas May 16, 2001, pet. ref'd) (mem. op., not designated for publication) (holding officers were "not required to give appellant the *Miranda* warning" though "officers pulled their squad cars in behind appellant, blocking him in the driveway," because "[n]o evidence shows [the officer] pointed his gun at appellant or that he had handcuffed or otherwise physically restrained appellant").

Ragan testified he initiated the conversation with appellant by notifying appellant of the reason for the stop. "While I was speaking with [appellant,] getting his identification and stuff, I mentioned that we had received a narcotics complaint for himself and his residence and asked him about the validity of it," testified Ragan. *See Ortiz*, 382 S.W.3d at 374; *see also Schmude*, 2014 WL 3926749, at *10 ("[T]he mere fact that the suspect becomes the focus of a criminal investigation does not convert a roadside stop into an arrest."); *Estrada v. State*, No. 04–12–00136–CR, 2012 WL 6720655, at *3 (Tex. App.—San Antonio Dec. 28, 2012) (mem. op., not designated for publication), *aff'd*, No. PD–0106–13, 2014 WL 969221 (Tex. Crim. App. Mar. 12, 2014) ("[Q]uestioning outside of a

8

custodial environment is not prohibited, even if it is likely to provoke an incriminating statement.")). At that point, Ragan stated appellant was forthcoming about the drugs in the home, and Ragan requested permission to enter the home to retrieve the drugs. Appellant does not dispute that Ragan's line of questioning was brief; appellant moreover testified he "enter[ed] the home on [his] own free will," and he "couldn't say that [he] was forced in there"—which is demonstrative of how unrestricted appellant's movements were at the time. *See United States v. Reyes*, 963 F.3d 482, 490 (5th Cir. 2020); *compare McCraw v. State*, 117 S.W.3d 47, 53–54 (Tex. App.—Fort Worth 2003, pet. ref'd) (concluding that appellant was "in custody" for *Miranda* purposes when officers blocked appellant's vehicle in the driveway, ordered him out of the vehicle at gunpoint, and directed him to step to the rear of the vehicle) *with State v. Waldrop*, 7 S.W.3d 836, 839 (Tex. App.—Austin 1999, no pet.) (concluding that appellant was not "in custody" for *Miranda* purposes when he was removed from his truck and questioned by an officer) and *Nicholson*, 2001 WL 515919, at *3.

Further, Ragan never indicated to appellant that he could not leave or made statements indicating that appellant was under arrest. *See Saenz*, 411 S.W.3d at 496; *Hawkins*, 592 S.W.3d at 610; *see also Thompson*, 2013 WL 2399147, at *5. To the contrary, Ragan testified appellant had committed no arrestable offense at the time of the encounter. We additionally note that there was only one patrol car at the scene and only two officers present, which is also consistent with a routine, non-custodial investigation. *See Ortiz*, 382 S.W.3d at 374; *see also Schmude*, 2014 WL 3926749, at *10.

In light of the foregoing combined facts, eschewing a divide-and-conquer or piecemeal approach, we cannot conclude that the circumstances here were such that a

reasonable person in appellant's position would have believed he was restrained to the degree associated with a formal arrest as opposed to a mere investigative detention. *See Ortiz,* 382 S.W.3d at 372–73; *Saenz*, 411 S.W.3d at 496; *see also State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011) ("[C]ourts afford the prevailing party 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" (quoting *State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008))). Appellant's first issue is overruled.

## IV. WARRANTLESS SEARCH

Appellant next contends that the trial court erred in denying his motion to suppress the evidence obtained as a result of the warrantless search of his home because there was no basis for Andrews to conduct a protective sweep of the residence, and he did not provide consent to search the residence.

### A. Applicable Law

The Fourth Amendment to the United States Constitution and article I, § 9 of the Texas Constitution protect against unreasonable searches and seizures. *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. A criminal defendant who files a motion to suppress challenging the admissibility of evidence under the Fourth Amendment bears the burden of producing some evidence that rebuts the presumption of proper police conduct. *White v. State*, 549 S.W.3d 146, 155 (Tex. Crim. App. 2018). This burden is met when it is established that a search occurred without a warrant. *Id.* The burden then shifts to the State to prove that the search and seizure was nonetheless reasonable under the totality of the circumstances. *Id.*

10

We presume that a warrantless police entry into a person's home is unreasonable unless the entry falls within an exception to the warrant requirement. *See State v. Rodriguez*, 521 S.W.3d 1, 10 (Tex. Crim. App. 2017) (listing out widely recognized exceptions to the warrant requirement). Voluntary consent is one such exception,[5] and the State must establish that a warrantless search falls under the exception. *Id.*; *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010) (citing *Johnson v. State*, 226 S.W.3d 439, 443 (Tex. Crim. App. 2007); *United States v. Matlock*, 415 U.S. 164, 165–66 (1974) ("[T]he search of property, without a warrant and without probable cause, but with proper consent voluntarily given, is valid under the Fourth Amendment.")). Consent may be given orally or by action, or shown by circumstantial evidence. *Valtierra*, 310 S.W.3d at 448. The validity of an alleged consent to search is a question of fact to be determined from the totality of the circumstances. *State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011). The "standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* Because issues of consent are necessarily fact-intensive, a trial court's finding of voluntariness must be accepted on appeal unless it is clearly erroneous. *See Meekins v. State*, 340 S.W.3d 454, 460 (Tex. Crim. App. 2011).

Further, a third-party can consent to a search to the detriment of another's privacy interest if the third party has actual or common authority over the place or thing to be

---

[5] Another exception is the "protective sweep." *Maryland v. Buie*, 494 U.S. 325, 327 (1990); *Reasor v. State*, 12 S.W.3d 813, 815 (Tex. Crim. App. 2000). A protective sweep is a "quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Buie*, 494 U.S. at 327. The sweep must not be a "full search of the premises" and the searching officers must possess "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Reasor*, 12 S.W.3d at 816.

searched. *State v. Rodriguez*, 521 S.W.3d 1, 19 (Tex. Crim. App. 2017) (citing *Hubert v. State*, 312 S.W.3d 554, 560–61 (Tex. Crim. App. 2010)). Actual or common authority, however, is "not necessarily a prerequisite for a valid consensual search," provided that "an officer reasonably, though mistakenly, believes that a third party purporting to provide consent has actual authority over the place or thing to be searched." *Id.* "Apparent authority is judged under an objective standard: 'Would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?'" *Id.* (quoting *Limon v. State*, 340 S.W.3d 753, 756 (Tex. Crim. App. 2011). Reasonableness in this context hinges on "widely shared social expectations" and the "commonly held understanding about the authority that co-inhabitants may exercise." *Id. at* 19–20; *see also, e.g.*, *State v. Ramos-Davila*, No. 13-18-00670-CR, 2019 WL 4866043, at *3 (Tex. App.—Corpus Christi–Edinburg Oct. 3, 2019, no pet.) (mem. op., not designated for publication) (finding that, where a visitor had been sharing a hotel room with the defendant for several days, although the visitor was not a "joint occupant," "a person of reasonable caution would believe, under these circumstances, that [the visitor] had authority over the premises"); *Bartie v. State*, No. 14-16-00674-CR, No. 14-16-00675-CR, 2017 WL 3272286, *4 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (mem. op., not designated for publication) (finding that officers received consent from appellant's "common-law" wife even though there was conflicting testimony as to whether she lived at the home).

**B.     Monroe's Consent**

Appellant acknowledges that his then-common law spouse gave her consent for Andrews to enter the home and conduct a "protective sweep"; however, appellant contends that her consent was not valid.

The facts are largely uncontroverted: Monroe was residing at the residence as appellant's common-law wife or long-term partner,[6] and she provided consent for Andrews to enter the residence for the limited purpose of ensuring there were no other persons inside the home. We conclude that a person of reasonable caution would believe, under these circumstances, that Monroe had apparent authority over the premises, and Andrews validly received consent to enter the home. *See Rodriguez*, 521 S.W.3d 19–20; *Limon*, 340 S.W.3d at 756; *see also Miller v. State*, 393 S.W.3d 255, 266 (Tex. Crim. App. 2012) (providing that a person who consents to law enforcement entry "may specifically limit or revoke his consent"); *Ramos-Davila*, 2019 WL 4866043, at *3.

Although appellant focuses on Andrews's categorization of the entry as a "protective sweep," we need not render an analysis of whether Andrew's actions fit under the protective sweep exception because Andrews obtained explicit, albeit limited, consent to conduct a search of the residence. *See Rodriguez*, 521 S.W.3d 19–20; *Miller*, 393

---

[6] The following exchange occurred during the State's cross-examination of appellant:

Q.     Do you remember telling Detective Ragan in the interview that we listened to that Ashley Monroe was your wife and you had been together ten years?

A.     I never said she was my wife.

Q.     You don't remember telling them you consider her your wife?

A.     I consider her, but we don't have a license.

Q.     You consider her your wife, that's what you told them; is that correct?

A.     Yes, sir, I would say so.

S.W.3d at 266. Thus, the trial court properly concluded Andrews's entry into the residence was lawful. *See Rodriguez*, 521 S.W.3d at 10.

## C.    Appellant's Consent

We next turn to the issue of appellant's consent of Ragan's entry into the residence. We observe that the record contains conflicting testimony. Ragan testified appellant was forthcoming about the marijuana located inside the residence, offered to retrieve the marijuana, permitted Ragan into the residence, handed Ragan the marijuana, and only revoked his consent after Ragan requested permission to search the entire residence for additional narcotics. According to appellant, although he told Ragan about the marijuana inside the home, he could not recall whether he divulged that information before or after Andrews told Ragan he observed "'roaches in plain view.'" Appellant additionally maintained he never offered to go inside the house to retrieve the marijuana, and Ragan never asked him for consent to enter the house. Appellant testified he was not asked for his consent to search the residence until after he had handed over the marijuana.

Under the circumstances of this case, because appellant denies ever providing consent, the validity of appellant's consent was a factual determination that turned on witness credibility. *See Arellano*, 600 S.W.3d at 57; *Hutchins v. State*, 475 S.W.3d 496, 500 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (finding that, where a defendant denies consent was provided in contravention to officer testimony, the trial court's determination turns on witness credibility). In accordance with the established standard of review on a motion to suppress, we afford "almost total deference" to the court's factual determination that appellant validly consented to the search, and that determination was

supported in the record by the officer's unequivocal testimony that appellant gave verbal consent to enter the premises. *See Arellano*, 600 S.W.3d at 57; *Hutchins*, 475 S.W.3d at 500; *Uriel-Ramirez v. State*, 385 S.W.3d 687, 693 (Tex. App.—El Paso 2012, no pet.) (finding that appellant consented to a search where detectives testified appellant said "'Go ahead," and "the trial court was free to disbelieve" appellant's testimony that he did not provide consent). The court's finding is not "clearly erroneous" when viewed in the light most favorable to the prosecution, and we defer to it on appeal. *See Ruiz*, 581 S.W.3d at 785; *Meekins,* 340 S.W.3d at 459 n. 24, 460.

Having found that Monroe and appellant consented to the officers' respective entries into the home, we overrule appellant's second issue.

## VI. CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
3rd day of December, 2020.