**Opinion issued November 19, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-23-00747-CR**

———————————

**RICHARD ANDREW JOHNSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 43rd District Court**
**Parker County, Texas**
**Trial Court Case No. CR23-0222**

---

## MEMORANDUM OPINION

A Parker County jury convicted appellant Richard Andrew Johnson of the

third-degree felony offense of unlawful possession of a firearm by a felon.[1] *See* TEX.

---

[1] Pursuant to its docket-equalization authority, the Texas Supreme Court transferred this appeal from the Second Court of Appeals to this Court. *See* Misc. Docket No. 23-9079 (Tex. Sept. 26, 2023); *see also* TEX. GOV'T CODE § 73.001(a) (authorizing

PENAL CODE § 46.04(a), (e). After finding that Johnson was a habitual felony offender, the jury sentenced him to twenty-five years' imprisonment. *See id.* § 12.42(d). In his sole issue on appeal, Johnson contends that the trial court abused its discretion by denying his motion to suppress evidence obtained from a warrantless search of his vehicle. We affirm.

## Background

During the daytime on January 6, 2023, Vicki Patel, the owner of a Rodeway Inn hotel in Parker County, called 911 and reported that someone was driving around the hotel's parking lot in a white Volkswagen car with a gun inside the car.[2] Two Weatherford Police Department officers, Jose Lara and Christopher Bumpas, were dispatched to the hotel to investigate the report, and they arrived at the Rodeway Inn around the same time. Both officers wore body cameras, and video recordings of their interactions with Johnson were admitted at trial.[3]

When Lara arrived at the Rodeway Inn, he saw Johnson standing next to the driver's door of a white Volkswagen car. Lara parked and approached Johnson. As

---

transfer of cases). We are unaware of any conflict between the precedent of that court and of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2] In his appellate brief, Johnson states that Patel testified she did not see a gun in Johnson's *hand*. In an audio recording of the 911 call admitted into evidence at trial, however, Patel reported that she saw a gun in Johnson's *car*. Officers Lara and Bumpas both testified that they were dispatched to the Rodeway Inn to respond to a report that someone had a gun in the passenger seat of the car.

[3] The body camera recordings did not include the dispatch call to the officers.

Lara approached, Johnson sat down on the driver's seat with the door open. Bumpas approached the passenger side of Johnson's car and peered through the window, but he could not see a gun inside the car. He eventually went around to the driver's side of the vehicle and heard most of the conversation between Lara and Johnson.

Johnson told Lara that he was at the hotel to retrieve some belongings from a hotel guest. Lara told Johnson that someone had reported seeing a firearm in the passenger seat of Johnson's car, but Johnson denied having a firearm. Johnson said that he was on parole for an aggravated robbery conviction.

Lara asked Johnson for permission to search the car for a firearm, but Johnson said he did not want his car torn up during a search, and he again denied having a gun. Lara assured Johnson that the officers would not tear up the car and that they would search only where a firearm could be stored. Eventually, Johnson said, "I ain't got nothing," and then he exited the vehicle and stood aside. Lara testified at trial that Johnson "got out of the driver's seat, stated that he does not possess a firearm, and removed himself from the car and walked to the back." Lara did not request that Johnson exit the car, nor did Lara have his weapon drawn. Lara testified that he perceived Johnson's actions as providing consent to search the car. Bumpas agreed with defense counsel that Johnson did not give verbal consent to the search.

Once Johnson was outside the car, Lara ushered him to the back of the car while telling him that Bumpas was "going to take a look." Bumpas first patted down

3

Johnson's waistband, and then Lara told Johnson to "hang out in the back of your car right here." Johnson complied while Bumpas went to the passenger side of the car to search it. Bumpas found a 9mm gun "right behind the passenger seat in one of those kind of cloth grocery bags kind of wrapped up and just stuffed right behind the passenger seat."[4] The officers then arrested Johnson and took him into custody. A grand jury indicted Johnson for unlawful possession of a firearm by a felon.

On the day voir dire began, Johnson moved to suppress "[a]ll tangible evidence seized by law enforcement" during his detention and arrest, as well as the "[t]estimony of law enforcement or others concerning the tangible evidence" seized.[5] The motion argued that the evidence was seized unlawfully in violation of Johnson's constitutional rights. The appellate record does not contain a written ruling on the motion.

During trial, the State introduced into evidence the gun, the magazine, and the bullets found in Johnson's car. Defense counsel objected to admission of this evidence based on the pending motion to suppress. The trial court then excused the jury and held a brief hearing on the motion. The only evidence admitted at the

---

[4] The video recording from Bumpas's body camera did not clearly depict Bumpas finding a gun, although Bumpas testified that he found one.

[5] The motion also sought to suppress Johnson's statements to law enforcement officers and testimony about his actions while detained or arrested. On appeal, Johnson does not raise any issues concerning this evidence.

hearing was Bumpas's testimony that prior to searching Johnson's car, Bumpas did not read Johnson his *Miranda* rights, personally request consent to search Johnson's car, or see a firearm in plain view. Bumpas recalled that Johnson initially denied consent to search the car because he did not want officers to "tear up [his] car." But Johnson eventually exited the vehicle, which Bumpas agreed could have been his consent to search his person only. Bumpas also agreed that it was important to obtain consent before searching the vehicle and that there was no probable cause to search Johnson's car. The State did not question Bumpas or introduce any other evidence.

At the end of the hearing, Johnson requested that the trial court suppress the gun, the magazine, and the bullets that were recovered during the search. The trial court denied the request.

When questioning resumed before the jury, Johnson formally objected to admission of this evidence on the ground that it violated Johnson's due process rights under the Fourth Amendment of the United States Constitution and under the Texas Constitution. The trial court overruled the objection. Defense counsel requested a running objection to the evidence, but counsel withdrew the request before obtaining a ruling and stated that she would "object when needed." Johnson did not object to any other evidence concerning the gun found in his car. His primary defense was that the search was unconstitutional because he did not consent to the search.

After deliberating, the jury found Johnson guilty of the third-degree felony offense of unlawful possession of a firearm by a felon. *See* TEX. PENAL CODE § 46.04(a), (e). During the punishment phase of trial, Johnson pleaded not true to three felony enhancement paragraphs, but the jury found that these allegations were true. *See id.* § 12.42(d). The jury sentenced Johnson to twenty-five years' imprisonment as a habitual offender. *See id.* This appeal followed.

## Suppression of Evidence

In his sole issue on appeal, Johnson contends that the trial court erred by denying his motion to suppress the gun and its magazine and bullets found during the search of his vehicle.

## A. Standard of Review

We review a trial court's ruling on a motion to suppress for an abuse of discretion under a bifurcated standard. *State v. Torres*, 666 S.W.3d 735, 740 (Tex. Crim. App. 2023); *Enns v. State*, 612 S.W.3d 616, 622 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (quotation omitted). A trial court abuses its discretion if its ruling is "arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *Enns*, 612 S.W.3d at 622 (quoting *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014)).

First, we afford almost total deference to the trial court's determination of historical facts and rulings on mixed questions of law and fact, particularly when

these determinations are based on an assessment of credibility and demeanor. *Torres*, 666 S.W.3d at 740. At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018); *Enns*, 612 S.W.3d at 622. As the factfinder, the court "may believe or disbelieve all or any part of a witness's testimony even if that testimony is not controverted." *Enns*, 612 S.W.3d at 622. Although we generally limit our review to evidence introduced at the suppression hearing, we also consider relevant trial testimony when the parties consensually relitigate the issue at trial. *Id.* at 623; *accord Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996).

Second, we review de novo pure questions of law and mixed questions of law and fact that do not turn on an assessment of credibility and demeanor. *Torres*, 666 S.W.3d at 740–41.

When, as here, the trial court does not issue findings of fact, we view the evidence in the light most favorable to the court's ruling and assume that the court made implicit findings of fact that support its ruling so long as such findings are supported by the record. *Lerma*, 543 S.W.3d at 190; *Enns*, 612 S.W.3d at 623. We will sustain a ruling that is correct under any theory of the law. *Lerma*, 543 S.W.3d at 190; *Enns*, 612 S.W.3d at 623.

**B.     Governing Law**

The United States and Texas Constitutions protect citizens against unreasonable searches and seizures. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *State v. McGuire*, 689 S.W.3d 596, 602 (Tex. Crim. App. 2024). Evidence obtained in violation of a person's constitutional rights cannot be admitted against the accused at trial. TEX. CODE CRIM. PROC. art. 38.23(a); *Enns*, 612 S.W.3d at 623. A party may object to such evidence by filing a motion to suppress. *White v. State*, 549 S.W.3d 146, 155 (Tex. Crim. App. 2018) ("A motion to suppress evidence is nothing more than a specialized objection to the admissibility of that evidence.") (quoting *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981) (op. on reh'g)) (internal quotations and alterations omitted). The defendant, as movant, has the initial burden to produce evidence that defeats the presumption of proper police conduct, such as evidence that a search occurred without a warrant. *State v. Martinez*, 569 S.W.3d 621, 623–24 (Tex. Crim. App. 2019) (quotation omitted). If the defendant meets this burden, the burden shifts to the State to prove the reasonableness of the search. *Id.* at 624 (quotation omitted).

Generally, a police officer must obtain a warrant based on probable cause before searching a vehicle unless a recognized exception applies. *See McGuire*, 689 S.W.3d at 602; *Enns*, 612 S.W.3d at 623. "The touchstone of the Fourth Amendment is reasonableness." *State v. Villareal*, 475 S.W.3d 784, 795–96 (Tex. Crim. App.

2014) (citing *Riley v. California*, 573 U.S. 373, 381 (2014)). A warrantless search "is reasonable only if it falls within a recognized exception" to the warrant requirement. *Id.* at 796 (quoting *Missouri v. McNeely*, 569 U.S. 141, 148 (2013)).

A warrantless search may be reasonable if police obtain consent for the search. *State v. Ruiz*, 581 S.W.3d 782, 785–86 (Tex. Crim. App. 2019) (quotation omitted); *Gomez v. State*, 606 S.W.3d 276, 285 (Tex. App.—Houston [1st Dist.] 2020, no pet.). If the State relies on consent to justify a search, the State bears the burden to prove by clear and convincing evidence that the defendant freely and voluntarily gave consent. *Ruiz*, 581 S.W.3d at 786; *Gomez*, 606 S.W.3d at 285. "The burden requires the prosecution to show the consent given was positive and unequivocal and there must not be duress or coercion, actual or implied." *Hutchins v. State*, 475 S.W.3d 496, 498 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (quoting *Meeks v. State*, 692 S.W.2d 504, 509 (Tex. Crim. App. 1985)). Consent may be given orally or by action, and it may be established by circumstantial evidence. *Gomez*, 606 S.W.3d at 285.

Whether consent was voluntary is a "question of fact to be determined from the totality of all the circumstances." *Villareal*, 475 S.W.3d at 799 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)). Like the Fourth Amendment generally, reasonableness is the "touchstone for determining voluntary consent to search." *Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011). Courts may

consider the defendant's sophistication in the law, mental acuity, and ability to exercise free choice when facing arrest. *Ruiz*, 581 S.W.3d at 786. Courts may also consider whether the defendant was advised of his *Miranda* rights or that the results of the search could be used against him. *Id.* (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)). A defendant may limit the scope of consent or revoke it, and the ability to revoke is a necessary element of valid consent. *Id.* (quoting *Villareal*, 475 S.W.3d at 799). "The ultimate question is whether the person's will has been overborne and his capacity for self-determination critically impaired, such that his consent to search must have been involuntary." *Id.* (quotations omitted).

## C. Analysis

Johnson contends that the search of his car violated his rights under the Fourth Amendment and under the Texas Constitution because neither his words nor his actions established his consent to the search.[6] Johnson also argues that to the extent he consented to a search, the scope of his consent was limited to a search of his person.

The parties agree that the officers did not obtain a warrant prior to searching Johnson's car. *See McGuire*, 689 S.W.3d at 602 (stating that police must generally obtain search warrant based on probable cause unless recognized exception applies).

---

[6]    Johnson does not challenge the propriety of the officers approaching and speaking with him prior to the search of his car.

The parties also agree that Johnson did not provide verbal consent to the search. *See Gomez*, 606 S.W.3d at 285 (stating that consent is recognized exception to search warrant requirement, and consent may be given orally or by action). The parties disagree, however, whether Johnson's actions sufficiently constituted consent to the search of his car. *See id.*

The evidence admitted at trial showed that Officers Lara and Bumpas were dispatched to the Rodeway Inn hotel to respond to a report by the hotel owner that someone was driving a white Volkswagen car with a gun in the passenger seat. Lara and Bumpas wore body cameras that videorecorded their interaction with Johnson. These recordings—more specifically, the recording from Lara's body camera—are the best evidence concerning whether Johnson's actions established his consent to the search.[7]

The video recordings showed that Johnson was sitting in the driver's seat of a white Volkswagen car when Lara first approached him. Lara told Johnson that the officers were responding to a report that someone had a gun in a vehicle matching

---

[7] We acknowledge that this evidence was not introduced at the suppression hearing. However, the video recordings were published to the jury shortly before the hearing, Johnson did not object to their admission, and neither party argues on appeal that we should not consider the video recordings. Moreover, Johnson's defense at trial focused on the consent issue. *See Enns v. State*, 612 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (stating that appellate courts reviewing ruling on motion to suppress generally limit review to evidence introduced at suppression hearing, but other relevant testimony may be considered when parties consensually relitigate issue at trial). Therefore, we will consider the video recordings in resolving Johnson's appellate issue.

11

the description of Johnson's car, but Johnson denied having a gun. Johnson admitted that he was on parole for an aggravated robbery conviction. Lara asked Johnson for permission to search the car, but Johnson declined because he did not want the officers to tear up the car. Lara assured Johnson that they would not tear up the car and would only look for a firearm where one could be stored. Johnson stated that Lara was being real with him, but Johnson then said "I ain't got nothing." Without any additional prompting from Lara, Johnson stood up outside the car and moved aside from it. Lara ushered Johnson towards the back of the car where Bumpas was standing, and Johnson allowed Bumpas to pat down his waistband. Lara told Johnson to "hang out in the back of your car right here" because Bumpas was "going to take a look" in the car. Johnson complied and did not object to the search. Inside the car, Bumpas found a firearm inside a cloth bag behind the front passenger seat. The officers then arrested Johnson.

We conclude that clear and convincing evidence established that Johnson freely and voluntarily consented to the search of his car. *See Ruiz*, 581 S.W.3d at 786; *Gomez*, 606 S.W.3d at 285. Although Johnson initially denied consent to search his car due to his fear that the officers would tear it up, he eventually exited the car and stood aside after Lara assured him that the officers would not tear it up but would instead search only where a firearm could be stored. After exiting the car, Johnson followed Lara to the back of the car, allowed Bumpas to search his waistband, and

remained silent when Lara informed him that Bumpas was "going to take a look" in the car. The officers spoke respectfully with Johnson; they did not have their weapons drawn or otherwise exhibit coercive, threatening, or forceful conduct; and Johnson did not appear to be under duress or coercion. *See Hutchins*, 475 S.W.3d at 498. By moving aside from the car and allowing the officers to search the car, Johnson consented to the search by his actions. *See Gomez*, 606 S.W.3d at 285. Additionally, the video recording from Lara's body camera shows Johnson's general demeanor, subtle facial expressions, and subtle hand movements, all of which corroborate his consent to the search. *See id.*

Moreover, after exiting the car, Johnson remained silent and did not protest the search of his person or car, even after Lara informed him that Bumpas was "going to take a look" in the car. To the extent that Johnson intended to give consent only to search his person, he was "free to limit the scope of the consent" he gave, but his "silence in the face of an officer's further actions may imply consent to that further action" of searching his car. *See Valtierra v. State*, 310 S.W.3d 442, 449 (Tex. Crim. App. 2010). Reasonableness is the "touchstone" for determining whether consent to search is voluntary. *Meekins*, 340 S.W.3d at 459; *see also Villareal*, 475 S.W.3d at 795–96. In this context, reasonableness concerns what "the typical reasonable person [would] have understood by the exchange between the officer and the suspect[.]" *Valtierra*, 310 S.W.3d at 449 (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)).

13

The trial evidence showed that when Johnson exited the car, Lara had only requested to search the car, not his person. Only after Johnson exited the car and was standing near the trunk did Bumpas pat down Johnson's waistband. Based on the trial evidence, including the body camera video recordings, a reasonable person would have understood Johnson's actions, including his silence, as consent to search his car. *See id.* ("If the consent to search is entirely open-ended, a reasonable person would have no cause to believe that the search will be limited in some way.") (quoting *United States v. Mendoza-Gonzalez*, 318 F.3d 663, 670 (5th Cir. 2003)).

Finally, the reasonableness factors indicate that the search of Johnson's car was reasonable. *See Ruiz*, 581 S.W.3d at 786. Neither party argues that Johnson's level of sophistication in the law and mental acuity are relevant to his ability to consent to the search. *See id.* Moreover, there is no indication that Johnson lacked the ability to exercise free choice prior to providing consent. *See id.* As discussed above, the officers did not threaten, coerce, or force him to give consent. And although the officers did not advise Johnson of his *Miranda* rights prior to the search, they testified that they did not have probable cause to believe Johnson had committed or was committing a crime prior to the search that uncovered the firearm. *See id.* Nevertheless, the officers clearly and repeatedly informed Johnson that they wanted to search the car prior to doing so. Johnson had the ability to limit the scope of his consent or to revoke it, yet he remained silent with full knowledge that the search

14

was commencing. *See id.*; *Valtierra*, 310 S.W.3d at 449. We therefore cannot conclude that Johnson's "will ha[d] been overborne and his capacity for self-determination critically impaired, such that his consent to search must have been involuntary." *See Ruiz*, 581 S.W.3d at 786 (quotations omitted).

Considering the totality of the circumstances, as we must, we conclude that clear and convincing evidence establishes that Johnson's actions constituted free and voluntary consent to the search of his car. *See id.*; *Villareal*, 475 S.W.3d at 799; *Gomez*, 606 S.W.3d at 285. We therefore hold that the trial court did not abuse its discretion by denying Johnson's motion to suppress. *See Torres*, 666 S.W.3d at 740. We overrule Johnson's sole issue on appeal.

## Conclusion

We affirm the trial court's judgment of conviction.



David Gunn
Justice

Panel consists of Justices Goodman, Guerra, and Gunn.

Do not publish. TEX. R. APP. P. 47.2(b).